FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**July 11, 2023**

Christopher M. Wolpert
Clerk of Court

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

KRISSY GORSKI,

    Defendant - Appellant.

No. 22-3244
(D.C. No. 2:20-CR-20018-DDC-2)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BACHARACH**, and **ROSSMAN**, Circuit Judges.
_____

Ms. Krissy Gorski appeals from the denial of her motion for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A). We reverse.

**I.    Ms. Gorski goes to prison, and her sons become wards of the State.**

Ms. Gorski has a history of drug abuse and drug-related crimes. In 2018, the State removed her two sons and they became wards of the State.

---

[*] Oral argument would not help us decide the appeal, so we have decided the appeal based on the record and the parties' briefs. *See* Fed. R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G).

This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value if otherwise appropriate. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

In January 2020, Ms. Gorski met Dustin Schultz-Bergin, a supplier of illegal drugs in the Kansas City area. He offered Ms. Gorski money to drive him to El Paso, Texas, ostensibly because he needed to pick up some cash. Ms. Gorski learned during the drive that they were actually going to pick up illegal drugs.

Drug Enforcement Administration agents learned of the plans and coordinated with other law enforcement agencies to arrest Mr. Schultz-Bergin. After the agents had coordinated, officers spotted Mr. Schultz-Bergin at a service area in Chase County, Kansas. He was in the front passenger seat of Ms. Gorski's car, with Ms. Gorski in the driver's seat. Another woman was in the back seat. All three individuals left the vehicle. The women went inside to the restroom while Mr. Schultz-Bergin remained outside.

State troopers approached Mr. Schultz-Bergin to arrest him; but he jumped in the car, started its engine, backed into the troopers' patrol vehicle, and sped away. The troopers pursued Mr. Schultz-Bergin and disabled his car, but he ran away. A shootout ensued, but the troopers ultimately apprehended Mr. Schultz-Bergin. Inside the car were over 3,000 grams of methamphetamine and a handgun.

In July 2020, Ms. Gorski was charged with conspiracy to distribute and possess with intent to distribute at least 50 grams of methamphetamine. The district court released Ms. Gorski on a personal

recognizance bond and imposed conditions of pretrial supervision. In September 2021, she pleaded guilty but remained free based on her bond.

In January 2022, a Kansas state court granted Ms. Gorski "residential and sole legal custody of" her children. R., Vol. I at 103 (child-custody order). In March 2022, the district court sentenced Ms. Gorski to 60 months' imprisonment and she began serving her sentence. She had planned to have her step-mother and sister care for her sons while she was in prison, but her step-mother and sister died in late March and early April. With their deaths, the boys returned to state custody "because of [their] father[']s abuse" and the absence of a familial caregiver. *Id.* at 100; *see also id.* at 105-08 (temporary custody order).

## II. Ms. Gorski's seeks compassionate release so that she can care for her sons.

On April 24, 2022, Ms. Gorski requested compassionate release from the warden. Ms. Gorski explained that her sons had been placed in the State's custody because there was no one else to care for them. She also said that she had a home in Olathe, Kansas, and would resume drug-addiction counseling if released.

When thirty days elapsed without action from the warden, Ms. Gorski moved for compassionate release. She repeated the points raised to the warden and stated that she had recently obtained sole custody. The government opposed release, arguing that Ms. Gorski had "failed to

3

provide sufficient proof of her legal rights to again provide care for her sons," *id.* at 92, had served only a few months of her sixty-month sentence, and had engaged in conduct creating "a direct danger to society." *Id.* at 97.

Ms. Gorski replied, describing

- her sons' mental-health disabilities and trauma while in State custody and
- her successful parenting efforts prior to her incarceration.

Ms. Gorski also enclosed a letter from her sons' guardian ad litem in which he had stated that (1) there were "no other relative options for the children" and (2) "[t]he State, KVC (the State's foster care provider), and [he] [had] agree[d] that the children should reintegrate with Ms. Gorski if she is compassionately released from prison." *Id.* at 117. Ms. Gorski also enclosed a letter from a case manager responsible for reintegrating Ms. Gorski with her sons. According to the case manager, Ms. Gorski's sons "appeared to have [a] secure attachment to their mother," who "ha[d] a strong bond with the children and ha[d] shown the ability to meet their needs" before being imprisoned. *Id.* at 118.

### III. The district court denies compassionate release based on Ms. Gorski's alleged involvement in the shootout and doubts about her custody over her sons.

The district court denied Ms. Gorski's motion for compassionate release. Although the court acknowledged that the boys' only alternate caregivers had died, the court concluded that Ms. Gorski had not shown

4

extraordinary and compelling reasons for her release. For this conclusion, the district court reasoned that

- "Ms. Gorski ha[d] not shown that she has legal custody of her children," R., Vol. II at 8, and

- she had lost custody in the past due to a drug relapse.

The court commented that "there [was] no guarantee that the state of Kansas would return her children to her immediately—or [that her children would] remain with her—if she [were] released from prison." *Id.*

The district court then determined that the statutory sentencing factors did not support Ms. Gorski's release.[1] The court referred to Ms. Gorski's lengthy history of drug-related offenses, her struggle with addiction and drug use, and her "willing[ ] assist[ance]" in the trip with Mr. Schultz-Bergin. *Id.* at 9. But the court also suggested that Ms. Gorski had some responsibility for Mr. Schultz-Bergin's flight from troopers and the ensuing gun battle. In particular, the court said that Ms. Gorski "[had] participated in this drug trafficking event *and the shooting it [sic] followed*." *Id.* (emphasis added).

---

[1] The statutory factors include the defendant's personal history and characteristics; her sentence relative to the nature and seriousness of her offenses; the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; the need for rehabilitative services; the applicable guideline sentence; and the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See* 18 U.S.C. § 3553(a).

## IV. The district court erred in relying on Ms. Gorski's involvement in the shootout and doubts about her ability to obtain custody over her sons.

We review orders denying compassionate release for an abuse of discretion. *United States v. Hemmelgarn*, 15 F.4th 1027, 1031 (10th Cir. 2021). In our view, the court abused its discretion.

Federal law allows defendants to move for compassionate release after exhausting administrative remedies. 18 U.S.C. § 3582(c)(1)(A)(i); *see United States v. Maumau*, 993 F.3d 821, 830 (10th Cir. 2021). A district court may grant a compassionate-release motion when it (1) "finds that extraordinary and compelling reasons warrant such a reduction"; and (2) "considers the factors set forth in [18 U.S.C.] § 3553(a), to the extent that they are applicable." *Id.* at 831.

### A. Extraordinary and Compelling Reasons

The Sentencing Commission has declared that an extraordinary and compelling reason for compassionate release is "the death or incapacitation of the caregiver of the defendant's minor child or minor children." U.S. Sentencing Guidelines Manual § 1B1.13, cmt. n.(1)(C)(i) (U.S. Sentencing Comm'n 2018). The district court recognized this declaration, noted that it may inform resolution of Ms. Gorski's motion for compassionate release,[2]

---

[2] *See United States v. Hald*, 8 F.4th 932, 938 n.4 (10th Cir. 2021) (stating that "it would hardly be an abuse of discretion for a district court to look to the present policy statement [U.S.S.G. § 1B1.13] for guidance" in resolving a defendant-filed compassionate-release motion), *cert. denied*,

6

and then stated that "Ms. Gorski ha[d] not shown that she has legal custody of her children." R., Vol. II at 8. But the Kansas custody order was in the district court record, showing that Ms. Gorski had custody, *see* R., Vol. I at 103, and the district court did not mention this order.

Granted, the Kansas state court has more recently given temporary custody to the Kansas Department for Children and Families. *See id.* at 107. But the district court did not mention this order either or address the fact that Ms. Gorski's only apparent impediment to custody was her incarceration, which would no longer be a problem if she were to obtain compassionate release.

The district court expressed concern that (1) the State of Kansas might not "immediately" return Ms. Gorski's children or (2) the children might not "remain with her" if she had a "drug relapse." R., Vol. II at 8. But the children's guardian ad litem and their foster-care case manager indicated that Ms. Gorski could reintegrate with her sons and obtain approval to do so if the court were to grant compassionate release. The district court did not mention that approval, and the court didn't say what

---

142 S. Ct. 2742 (2022); *accord United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) ("The Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding.").

7

more of a return guarantee would be needed. Nor did the court say why it was questioning the children's prompt return to their mother.[3]

Because the district court did not discuss various aspects of Ms. Gorski's custody of her children, we cannot determine whether the district court appropriately exercised its discretion in denying the existence of extraordinary and compelling reasons.

### B.   Statutory sentencing factors

In considering the statutory sentencing factors, the district court accurately referred to Ms. Gorski's prior drug-possession crimes and properly characterized her criminal history as evidence of a "years-long struggle with addiction and drug abuse." R., Vol. II at 9. The district court also correctly observed that Ms. Gorski had served less than a quarter of

---

[3]   In finding that Ms. Gorski had not shown extraordinary and compelling reasons, the district court relied on *United States v. Vela-Salinas*, No. 3:11-cr-00083-19, 2022 WL 391490 (M.D. Tenn. Feb. 8, 2022). There the district court denied a compassionate-release motion on the basis that "the care of minor children is . . . a problem, [that] without more, is an ordinary, not extraordinary, circumstance." *Id.* at *5. Notwithstanding that quoted language, *Vela-Salinas* is distinguishable because (1) it involved a seventeen year-old girl, rather than "very young child[ren]," 2022 WL 391490, at *4; (2) no alternate caregiver had died or had a documented incapacity; and (3) there were other relatives who could have served as caregivers, *id.* at **3-5. In contrast, our case presents two young children whose only available alternate caregivers had died, leaving their incarcerated mother—who had an order of legal custody and the support of State authorities—as the sole remaining option (short of the State's foster care system or an institutional placement).

her sentence. But the district court clearly erred to the extent that it had found her participation in Mr. Schultz-Bergin's shootout with troopers.

A district court abuses its discretion when it "makes a clear error of judgment, exceeds the bounds of permissible choice, or when its decision is arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment." *United States v. Mobley*, 971 F.3d 1187, 1195 (10th Cir. 2020) (internal quotation marks omitted). The district court also abuses its discretion when it decides a case based "on either a clearly erroneous finding of fact or conclusion of law." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010).

Ms. Gorski had nothing to do with the shootout between troopers and Mr. Schultz-Bergin. Indeed, she was in a bathroom when troopers approached Mr. Schultz-Bergin to arrest him. Even when Mr. Schultz-Bergin jumped in Ms. Gorski's car and sped off, she was away from the scene. In fact, Mr. Schultz-Bergin left her behind as he tried to get away from the troopers and engaged in the shootout.

C. **Necessity of Remand**

Given the factual error in the district court's statutory findings and potential oversight of Ms. Gorski's ability to regain custody, we remand for further proceedings. This disposition is consistent with the district court's independent authority to define in the first instance the proper scope of § 3582(c) "extraordinary and compelling reasons." *See Maumau*,

9

993 F.3d at 832 (observing district courts' authority "to determine for themselves what constitutes 'extraordinary and compelling reasons'"). And even if Ms. Gorski satisfies the "extraordinary and compelling reasons" requirement with the evidence she has submitted, sentence modification must still be warranted under the statutory sentencing factors. *See* 18 U.S.C. § 3582(c)(1)(A).

We can't know how the district court would rule on further consideration of Ms. Gorski's ability to regain custody and the absence of any involvement in the shootout. *See Zzyym v. Pompeo*, 958 F.3d 1014, 1033-34 (10th Cir. 2020) (remanding an administrative decision when the agency gave some reasons that were valid and some that were invalid). It is not apparent to us how the § 3553(a) factors would apply on remand if the district court were to drop reliance on Ms. Gorski's participation in the shootout.

## V.  Conclusion

We reverse the district court's judgment and remand this matter for further proceedings consistent with this order and judgment.

Entered for the Court

Per Curiam